UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

625 FUSION, LLC d/b/a
RED DOOR ASIAN BISTRO,
ANTONIO ASTA, and ZHI YU LIU,

      Plaintiffs,

vs.

CITY OF FORT LAUDERDALE and
ROBERT GONZALEZ,

      Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, 625 Fusion, LLC d/b/a Red Door Asian Bistro ("Red Door"), Antonio Asta ("Asta"), and Zhi Yu Liu ("Liu") (collectively Red Door, Asta and Liu are referred to herein as the "Plaintiffs"), sue the City of Fort Lauderdale ("City") and sue Robert Gonzalez in his individual capacity ("Gonzalez"), and state as follows:

### Nature of Action and Jurisdiction

1. This is an action for damages under 42 U.S.C. §§ 1983 and 1988, and the United States Constitution, and against Defendants for committing acts, under color of state law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States.

2. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 in that this is an action to redress violations of Plaintiffs' federally protected Constitutional rights.

3. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)1 and 28 U.S.C. § 1391(b)2 as all events giving rise to this cause of action occurred in this judicial district and Defendant City is located in this venue.

4. All conditions precedent to this action occurred, have been performed, were waived, or are otherwise excused. Although the Florida Department of Financial Services and United States Supreme Court precedent provide that no statutory notice is required under Section 768.28, Florida Statutes for Federal Civil Rights claims such as the ones brought in the case *sub judice*, Plaintiffs have filed a Statutory pre-suit notice under Section 768, Florida Statutes and have complied with all pre-suit prerequisites.

5. Plaintiffs have retained the undersigned lawyers to represent their interests in prosecuting this action, and said law firms are entitled to their reasonable attorneys' fees and costs incurred in connection with same.

**Parties**

6. Plaintiff, Red Door, is *sui juris* and a corporation situated in Broward County, Florida located at 625 East Las Olas Boulevard, Fort Lauderdale, Florida.

7. Plaintiffs Asta and Liu are the owners of the Red Door and are otherwise *sui juris*.

8. Defendant, the City of Fort Lauderdale, is a municipal corporation lying within Broward County, Florida.

9. Defendant Gonzalez is the City's Chief Mechanical Inspector and is otherwise *sui juris*.

10. At all times material, the individuals associated with the City as described fully herein, including but not limited to Gonzalez, were employees and public officials of the City and/or were acting as the City's agent and representative, acted under color of state law.

11. As a result of the subject incidents, Plaintiffs experienced severe pain and suffering including mental anguish, mental and emotional suffering, embarrassment, shame and humiliation, as well as business damages including loss of earnings and profits and having incurred unnecessary expenses, and other damages including but not limited to damages to their constitutional rights and property.

**Facts**

12. The owners of Red Door invested over one million dollars in opening their first Asian Fusion Restaurant in Broward County after many years of operating some of the most successful restaurants in the Hamptons in Long Island, New York.

13. The owners of Red Door had a goal of working with the City of Fort Lauderdale to continue to enhance Las Olas Boulevard with new and exciting upscale establishments that would contribute to the pride of this great city, starting with the Red Door as its first establishment in Broward County.

14. In fact, the owners opened the same restaurant with the same business model and same architecture that they have used in half a dozen other successful restaurants throughout New York, and more recently, at the Trump Tower in Sunny Isles Beach, Florida.

15. Plaintiffs have used the same type of kitchen equipment, and the same construction techniques, all of which were designed and approved by some of the finest engineers and architects in the world.

16. Unfortunately, the original opening of the Red Door was intentionally and unnecessarily delayed for several months due to insidious and illegal violations of the rights of the Plaintiffs, who had their dream turn into a nightmare. This was in part because Gonzalez, a mechanical inspector working for the City Building Department purposely issued a red flag on

April 30, 2018 on a kitchen hood, with no lawful basis or due process and one year after this issue should have been addressed. The Red Flag incorrectly stated that the kitchen hood was not properly certified, with all evidence to the contrary.

17.  Gonzalez issued the red flag despite the fact that the kitchen equipment at issue was already stamped as being properly certified for that intended purpose by the manufacturer, and with full knowledge that there was no basis in law or fact for issuance of said red flag.

18.  Moreover, a simple cursory search would have easily disclosed that this is the very kitchen product appropriate for that usage.

19.  The owners were needlessly forced to obtain letters from the manufacturer of the kitchen appliance (causing additional expense and delays), and also from the manufacturer of the insulation of the hood, along with confidential and privileged photographs and drawings from the actual safety tests done on the hood and the hood's apparatus.

20.  It was later disclosed in a letter from the manufacturer Owens, Corning, that Gonzalez intentionally misled and provided false information to the manufacturer of the insulation of the hood in order to procure a letter falsely suggesting that there was something wrong -- when Gonzalez and the City officials knew such was not the case.

21.  Gonzalez and the City knew that there was NEVER anything wrong with the hood or any of the kitchen equipment and the owners of the Red Door were forced to go through needless delays and an abusive process by obtaining letters and hiring experts over a kitchen hood that was already in usage throughout the City, which both the City and its officers were already aware.

22.  The City's Building official had to visit the Red Door personally, while another inspector -- a different inspector who does national training --- looked at the hood device and

quickly concluded that there were absolutely no issues and the red flag was erroneously issued by Gonzalez and the City.

23. On that date, the City building official, other City safety officials, and the City mechanical inspector, a different inspector who does national training, signed off on the remainder of the permits for the Red Door. They also congratulated the owners on the opening of the new restaurant, and wished them luck in serving food to customers that evening.

24. Plaintiffs then visited City Hall, verified that all of the permits were completed, and received the requisite occupational license to open shortly thereafter, followed by receipt of the liquor license.

25. This should have had a happy ending at this juncture, despite the hundreds of thousands of dollars spent as a result of the intentional discrimination and due process violations by the Chief Mechanical Inspector for the City, and despite the substantial loss of revenue incurred by the needless delays.

26. However, when the owner went to City Hall to get the Occupational License, Gonzalez went up to him and stated sarcastically, "You win. You win. See how long you remain open." Gonzalez then made inappropriate comments suggesting an anti-Asian bias.

27. Plaintiff Liu is a native of China and Gonzalez' remarks suggested that this was a factor in his discriminatory actions and outrageous conduct.

28. In other words, instead of being happy that a multi-million dollar restaurant was going to help energize Las Olas Boulevard, Gonzalez, the City's Chief Mechanical Inspector threatened the owner and let him know that he had been embarrassed and was going to do everything possible to create more problems for the Plaintiffs. Gonzalez also let him know that at least one of the reasons for the discrimination was his negative attitudes toward Asians.

29. The Plaintiffs' restaurant opened, served thousands of customers, and became one of the most popular sites on Las Olas Boulevard.

30. At some point it came to the attention of the owners that Gonzalez, true to his word, went into the City's computer system after the business opened and cancelled the mechanical approval received by the Plaintiffs. This was done with no notice, in violation of long-established procedures and violated the Plaintiff's rights to Due Process and Equal Protection.

31. The Red Door and its owners were never notified of this and found out through the rumor mill when their architect was visiting the City for other purposes and heard that Gonzalez was bragging that he took the unprecedented step of trying to cancel an approval, one given in the presence of the City building official and other witnesses.

32. This new issue by Gonzalez was raised months after all approvals were given, after all permits were closed, and after the Red Door opened with its occupation license and began successfully serving its customers.

33. On June 11, 2018, the Red Door's engineer, architect, and fire expert performed a front to back inspection of the property and found that Gonzalez's new concerns, which he asserted on behalf of the City, were once again baseless.

34. On that date, one of the owners of the Red Door flew to Fort Lauderdale at great expense and paid his engineer to come to a meeting with Gonzalez and other City building officials and staff to address the "new issues."

35. When the Plaintiffs arrived, they were rudely informed by the City officials that the meeting had been cancelled, and they learned that they had all wasted their time and money coming to the City's meeting. On the way out, Gonzalez noted the absence of Mr. Lui and made another comment about Lui being Asian.

36. A subsequent meeting with the City was arranged, at which time the owner, the engineer, and everyone else re-arranged their schedules to attend the City's rescheduled meeting to address any issues the City felt needed to be addressed.

37. That rescheduled meeting was also cancelled by the City.

38. Every subsequent request to re-schedule the meeting and address ANY possible issues being raised by Gonzalez and the City fell on deaf ears.

39. On each of the above-referenced occasions, it was requested that Gonzalez, the City's Chief Mechanical Inspector, recuse himself and end his involvement in this matter for the following reasons:

   a. The original denial of the City mechanical inspection permit was found to be based on erroneous information; and

   b. On more than one occasion Gonzalez indicated that he was embarrassed by what had transpired and confronted the owners and pledged to do whatever he could within his power to create problems to obstruct the business.

40. At this point, the owners had invested well over one million dollars in opening up the Red Door establishment that they hoped to be one of the crown jewels of a revitalized Las Olas Boulevard. They had done nothing but cooperate with the City and even Gonzalez in every respect. Yet, their lives were made miserable and they were harassed and threatened at the whim of a single City official who made an erroneous determination, and who continued to take punitive action against the Plaintiffs as part of his perverse, personal agenda, including his animosity toward Asians.

41. Gonzalez and other officials did not provide substantive or procedural due process and forced the Plaintiffs to have their business and personal well-being subject to the whim of Gonzalez's bias and lack of respect for the Plaintiffs property rights.

42. In one encounter, Gonzalez confronted Asta in the middle of the street and cursed at

him and advised that he was "holding cards" and that the Red Door would never open.

43. Other officials advised the plaintiffs that what Gonzalez and the City were doing to them was unprecedented and motivated by animosity toward the Plaintiffs. They also advised that such actions violated the due process right so the owners and warranted litigation.

44. The initial delays in opening restaurant based on false information, the revocation and the withdrawal of a valid permit and the complete denial of due process and equal protection obliterated Constitutionally protected Rights of the Plaintiffs.

45. As a result of the aforementioned improper conduct by Gonzalez and the City, the Plaintiffs have been irreparably damaged and continue to incur damages which are ongoing in nature.

## COUNT I
## VIOLATION OF EQUAL PROTECTION CLAUSE

46. Plaintiffs reincorporate and re-allege Paragraphs 1 through 45 as if fully set forth herein.

47. The City enforced a practice and custom of threatening, intimidating and extorting individuals intending to operate a business in the City, including these Plaintiffs, based on race and national origin.

48. The practice and custom was authorized by policymakers within the City, and it was a widespread practice so pervasive, permanent, and well-settled so as to constitute a custom, practice or usage with the full force of law.

49. As a direct and proximate result of the aforementioned acts and omissions, Plaintiffs' Fourteenth Amendment Rights have been violated. By their acts and omissions, the City officials, including but not limited to Gonzalez, acted under color of state law to deprive Plaintiffs of their Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

50. As a direct and proximate result of the violations of Plaintiffs' Fourteenth Amendment rights, Plaintiffs have suffered mental and emotional pain and suffering, mental anguish, embarrassment, humiliation, inconvenience, and other damages.

WHEREFORE, Plaintiffs demand judgment for compensatory and special damages, punitive damages, an award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 42 U.S.C. §§ 1920 and 1988, and all other relief the Court may deem just and proper.

## COUNT II
## DEPRIVATION OF PROPERTY AND RIGHTS WITHOUT DUE PROCESS

51. Plaintiffs reincorporate and re-allege Paragraphs 1 through 45 as if fully set forth herein.

52. The City enforced a practice and custom of threats, intimidation and extortion to deprive individuals, including Plaintiffs, of their property and rights, without procedural and substantive due process guaranteed under the Constitution, and in violation thereof.

53. The practice and custom was authorized by policymakers within the City and it was a widespread practice so pervasive and permanent, and wide-spread and well-settled, as to constitute a custom, practice or usage with the force of law. The use of threats, intimidation and extortion was the way things were "business as usual" within the City and the way things were done.

54. As a direct and proximate result of the aforementioned acts and omissions, Plaintiffs' Constitutional rights have been violated. By their acts and omissions, the City officials, including Gonzalez acted under the color of state law to deprive Plaintiffs of their Constitutional rights without due process in violation of 42 U.S.C. § 1983.

55. As a direct and proximate cause of the violations of Plaintiffs' rights, Plaintiffs have suffered severe mental and emotional pain and suffering, mental anguish, embarrassment, humiliation, and other damages.

WHEREFORE, Plaintiffs demand judgment for compensatory and special damages, punitive damages, an award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 42 U.S.C. §§ 1920 and 1988, and all other relief the Court may deem just and proper.

## COUNT III
## 42 U.S.C. §1983 DUE PROCESS VIOLATION AGAINST GONZALEZ

56. Plaintiffs reincorporate and re-allege Paragraphs 1 through 45 as though set forth fully herein and further allege as follows:

57. Plaintiffs had a property right in the continued operation of the business with the Defendant City as guaranteed by the United States Constitution.

58. The Fourteenth Amendment to the United States Constitution prohibits Gonzalez, the City's Chief Mechanical Inspector, from depriving a person like Plaintiffs of liberty or property without due process of law.

59. The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires, *inter alia*, that Gonzalez provide Plaintiffs meaningful due process before taking official action against the Red Door.

60. Gonzalez violated Plaintiffs' due process rights when he took improper official City actions against the Plaintiffs.

WHEREFORE, Plaintiffs, demand judgment against Defendant Gonzalez for damages, interests, and the costs of this action, including attorneys' fees and all other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues triable by jury.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on May 24, 2019, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

Respectfully submitted,

MICHAEL A. PIZZI, JR. P.A.
6625 Miami Lakes Drive East, Suite 313
Miami Lakes, Florida 33014
Telephone:    (305) 777-3800
Facsimile:    (305) 777-3802
Email:        mpizzi@pizzilaw.com

By: /s/ Michael A. Pizzi, Jr., Esq.
      MICHAEL A. PIZZI, JR.
      Florida Bar No.: 079545

LAW OFFICES OF DOUGLAS J. JEFFREY, P.A.
*Attorneys for Plaintiffs*
6625 Miami Lakes Drive East, Suite 365
Miami Lakes, Florida 33014
Telephone:    305.828.4744
Facsimile:    305.828.4718
Email:        dj@jeffreylawfirm.com

By: /s/ Douglas J. Jeffrey, Esq.
      DOUGLAS J. JEFFREY
      Florida Bar No. 149527